**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

FILED

2008 APR - 1  PM 12: 40

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____

| | |
|---|---|
| UNITED STATES OF AMERICA, §<br>Plaintiff, §<br>§<br>v. §<br>§<br>§<br>BENNY MARTINEZ, §<br>JOHNNY DELAROSA, §<br>a.k.a. Juanillo De La Rosa, §<br>RICHARD SALAZAR, §<br>a.k.a Rick, §<br>LORENZO SALAS, §<br>a.k.a. Yayo, §<br>and §<br>AMY MARTINEZ, §<br>Defendants. §<br>§ | CRIMINAL No.<br>A08 CR 084 SS<br>I N D I C T M E N T<br><br>[Violation:  21 U.S.C. §§ 846, 841(a)(1),<br>and 841(b)(1)(A) - Conspiracy and<br>Possession with intent to distribute five<br>kilograms or more of cocaine; 21 U.S.C.<br>§§ 841(a)(1) and 841(b)(1)(C) -<br>Possession with intent to distribute<br>cocaine; 21 U.S.C. §§ 841(a)(1) and<br>841(b)(1)(B) - Possession with intent to<br>distribute 500 grams or more of<br>cocaine; 18 U.S.C. § 2 - Aiding and<br>Abetting; 21 U.S.C. §§ 841(b)(1)(A) and<br>851 - Notice of Enhanced quantities of<br>controlled substances and Penalty<br>Factors] |

**THE GRAND JURY CHARGES:**

<u>**COUNT ONE**</u>
[21 U.S.C. § § 846, 841(a)(1) and 841(b)(1)(A)]

Beginning in or about 2005, and continuing until on or about the date of this indictment, in

Austin, within the Western District of Texas and elsewhere, the Defendants,

**BENNY MARTINEZ,**
**JOHNNY DELAROSA,**
**a.k.a. Juanillo De La Rosa,**
**RICHARD SALAZAR,**
**a.k.a. Rick,**
**LORENZO SALAS,**
**a.k.a. Yayo,**
**and**
**AMY MARTINEZ,**

unlawfully, knowingly and willfully did combine, conspire, confederate and agree with others known

and unknown to possess with intent to distribute cocaine, and said conspiracy involved five

kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, all in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A).

## OVERT ACTS

In furtherance of the conspiracy and in order to effect the objects thereof, the Defendants and their co-conspirators, known and unknown to the Grand Jury, committed and caused to be committed one or more of the following overt acts, among others, in the Western District of Texas and elsewhere:

1.    On or about November 9, 2007, BENNY MARTINEZ, hereinafter MARTINEZ, maintained records of the dollar amounts associated with his drug trafficking (drug tally sheets) which contained figures in excess of $300,000.

2.    On or about November 9, 2007, MARTINEZ possessed packaging connected with the drugs and monetary proceeds of his drug trafficking.

3.    On or about November 16, 2007, MARTINEZ possessed with intent to distribute kilogram quantities of cocaine and placed the kilo wrappers in the trash.

4.    On or about November 16, 2007, MARTINEZ possessed drug tally sheets with dollar amounts in excess of $300,000.

5.    On or about December 3, 2007, MARTINEZ brought a box and a black trash bag to JUANILLO DELAROSA's residence at 6814 Dubuque. *E.C. grah*

6.    On or about December 3, 2007, JOHNNY DELAROSA, a.k.a. JUANILLO, hereinafter DELAROSA, possessed with intent to distribute approximately one kilo of cocaine in his garage, as further charged in Count Two of this indictment.

7.   On or about December 3, 2007, DELAROSA left his house and he was arrested on a warrant.   Following his arrest, DELAROSA, aided and abetted by others known and unknown, attempted to have coconspirators move drugs and other drug related items out of his house before they could be found by law enforcement.

8.   On or about December 3, 2007, after the arrest of DELAROSA, LORENZO SALAS, hereinafter SALAS, went to DELAROSA's house to remove contraband. SALAS left DELAROSA's house carrying a black bag containing items from DELAROSA's house and placed them in SALAS' car.   In the black bag, SALAS possessed approximately $35,376.00 in cash, over 100 grams of cocaine, 5 pounds of marijuana, a dope scale, packaging and other items related to drug sales, as further charged in Count Three of this indictment.

9.   On or about December 3, 2007, Beatrice and Gabriel Marquez arrived at DELAROSA's home after SALAS had departed.   When Gabriel Marquez became aware of law enforcement's attention, he kept trying to alert others by using his cell phones despite orders from law enforcement to not use his telephones.

10.   On or about December 3, 2007, MARTINEZ, prior to being made aware that the police had stopped SALAS after he departed DELAROSA's home, attempted to reach SALAS on his telephone on approximately 15 occasions with no success in reaching SALAS.   At approximately 11:56 p.m. MARTINEZ personally went by DELAROSA's home and then drove away.

11.   On or about December 4, 2007, SALAS, called DELAROSA from jail in reference to his being arrested by law enforcement in possession of drug-related items removed from DELAROSA's house.   SALAS had a coded phone conversation in Spanish with DELAROSA regarding the items that SALAS had moved out of DELAROSA's house. SALAS indicated that he

should not have been sent to DELAROSA's house when there was that much "heat" (law enforcement attention). SALAS indicated that he took the "muchila" (stuff) and that it was a good thing that he had disappeared the stuff that DELAROSA had in the house. DELAROSA indicated to SALAS that they (law enforcement) had found a "thing" (a kilo of cocaine) in his garage. SALAS replied that he had got the ones that were . . . at which point DELAROSA cut SALAS off. DELAROSA stated that the "big one" was there (law enforcement was still able to find a kilogram in the garage after SALAS moved items from the house).

12.   On or about December 6, 2007, SALAS, who was in custody, called DELAROSA and asked him to get SALAS' car and he would find the keys to SALAS' house in the car. SALAS proceeded to give DELAROSA directions about where to find things in SALAS' house and to go to 2515 Thornton #13 and take everything. SALAS expressed urgency that these items needed to be removed "now!"

13.   On or about December 6, 2007, SALAS again called DELAROSA from jail and told DELAROSA that when he went to SALAS's house to get a phone number (a phone number in Mexico). SALAS told DELAROSA to call Blanca and tell Blanca to collect the last payment that SALAS sent. SALAS also told DELAROSA to get everything out of SALAS' house and that there would also be something in the small brown refrigerator. DELAROSA assured SALAS that he was going to take everything.

14.   On or about February 7, 2008, Gabriel Marquez called Beatrice Marquez from jail and engaged in a coded conversation regarding what had happened to some cocaine which he referred to as "dog food." Gabriel Marquez asked Beatrice Marquez to check the "dog food" to see if there

was any left. Beatrice Marquez said she checked but had not found any. Gabriel Marquez got upset

and told her he needed to find out who took all the "dog food."

15. On or about February 7, 2008, Gabriel Marquez called DELAROSA from the jail to talk

about the "dog food" (drugs). Gabriel Marquez told DELAROSA that he had talked to Beatrice but

would call her again to tell her that "Juanillo" (DELAROSA) is taking care of his pit bull and to send

the "dog food" to him. Gabriel Marquez expressed fear to DELAROSA that his mother-in-law may

have "it" and that she'll put another case on him (have him charged with an additional drug case).

16. On or about February 7, 2008, Gabriel Marquez called DELAROSA again and

DELAROSA asked to speak with Raymond Guerra who was in jail with Marquez. DELAROSA

told Guerra that he had "the papers" (the papers summarizing the evidence against Guerra and his

organization) and that they were trying to figure out who were the snitches. Guerra stated that the

law had him with a "bird and a half" (a kilo and a half) despite the fact that he had been arrested with

half of an ounce. DELAROSA then spoke briefly with Marquez and they expressed concern about

the "dog food."

17. On or about February 8, 2008, Gabriel Marquez called Beatrice Marquez about the drugs

("dog food") belonging to DELAROSA. Gabriel Marquez told Beatrice Marquez that "Juanillo"

(DELAROSA) was going to help him but that he needs the "dog food" and that Beatrice needed to

talk to her mom and tell her it's serious. Gabriel Marquez stated that the "thing" belonged to

DELAROSA and that he needed to get it back to DELAROSA.

18. On or about February 8, 2008, Gabriel Marquez called DELAROSA and told him that

he talked with Beatrice, told her about DELAROSA's pit bull, and that she needs to get this stuff

straightened out.

19. On or about February 11, 2008, Gabriel Marquez called DELAROSA, who indicated that DELAROSA would need to pay Beatrice Marquez a visit. Gabriel Marquez gave DELAROSA Beatrice's phone number and said that they have figured out who #1 and #2 are (they have figured out who informant #1 and informant #2 are who were listed in the law enforcement affidavit). DELAROSA stated that he wanted a copy of the affidavit and then DELAROSA got the inmate numbers for Gabriel Marquez and Raymond Guerra so that he could put money on their books (send them money).

20. On or about February 24, 2008, Gabriel Marquez spoke to DELAROSA on the telephone. DELAROSA asked if Gabriel Marquez had spoken to Beatrice. Gabriel Marquez replied that he had, that he had asked Beatrice if she gave DELAROSA the "movies and VCR" but she didn't want to talk about it. DELAROSA replied that he would have already been over there if he didn't have this "thing on me" (electronic monitor).

21. On or about March 3, 2008, BENNY and AMY MARTINEZ, possessed with intent to distribute hundreds of grams of cocaine, scales for weighing drugs, latex gloves, plastic packaging for drugs, earloop masks over $70,000 in cash ($10,000 of which was bound by rubber bands with a note stating "Amy 10,000" on it), and the key to the safety of a Taurus firearm at their residence at 1001 Brass Street in Austin, Texas, as further charged in Count Four of this indictment.

22. On or about March 3, 2008, RICHARD SALAZAR, hereinafter SALAZAR, made a quick visit (approximately 3 minutes) to MARTINEZ' house in order to obtain drugs. SALAZAR drove away from MARTINEZ' house with his headlights off and didn't turn his headlights on until turning onto another street. SALAZAR possessed with intent to distribute over 200 grams of cocaine, as further charged in Count Five of this indictment.

23.   On or about March 4, 2008, MARTINEZ possessed with intent to distribute over 5 kilograms of cocaine at a stash house he utilized to store drugs at 2501 Anken, Apartment #101, in Austin, Texas, as further charged in Count Six of this indictment.

All in violation of Title 21, United States Code, Section 846.

## COUNT TWO
### [21 U.S.C. Sections 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. Section 2]

On or about December 3, 2007, in Austin, within the Western District of Texas, the Defendant,

### JOHNNY DELAROSA, *a.k.a. Juanillo,*

aided and abetted by others, did unlawfully, knowingly and intentionally possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

## COUNT THREE
**[21 U.S.C. Sections 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. Section 2]**

On or about December 3, 2007, in Austin, within the Western District of Texas, the

Defendant,

### LORENZO SALAS,
a.k.a. Yayo,

aided and abetted by others, did unlawfully, knowingly and intentionally possess with intent to

distribute cocaine, a Schedule II Controlled Substance in violation of Title 21, United States Code,

Sections 841(a)(1) and 841(b)(1)(C).

**COUNT FOUR**
**[21 U.S.C. Sections 841(a)(1) and 841(b)(1)(B)]**

On or about March 3, 2008, in Austin, within the Western District of Texas, the Defendants,

**BENNY MARTINEZ**
**and AMY MARTINEZ,**

aiding and abetting each other, did unlawfully, knowingly and intentionally possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

## COUNT FIVE
### [21 U.S.C. Sections 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. Section 2]

On or about December 3, 2007, in Austin, within the Western District of Texas, the

Defendant,

### RICHARD SALAZAR,

aided and abetted by others, did unlawfully, knowingly and intentionally possess with intent to

distribute cocaine, a Schedule II Controlled Substance in violation of Title 21, United States Code,

Sections 841(a)(1) and 841(b)(1)(C).

## COUNT SIX
### [21 U.S.C. Sections 841(a)(1) and 841(b)(1)(A)]

On or about March 4, 2008, in Austin, within the Western District of Texas, the Defendant,

## BENNY MARTINEZ,

aided and abetted by others, did unlawfully, knowingly and intentionally possess with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

## PENALTY ENHANCEMENT NOTIFICATION

**Information Regarding Enhanced Punishment Pursuant to 21 U.S.C. § 851**

**Defendant BENNY MARTINEZ:**

Defendant, BENNY MARTINEZ, has been finally convicted of felony drug offenses which subject him to enhanced punishment pursuant to 21 U.S.C. §§ 851 and 841(b)(1)(A), including the following:

1.  On or about February 17, 1994, BENNY MARTINEZ was convicted of the state felony drug offense of Possession of Heroin Under 28 grams (Habitual) in Cause No. 94CR0996W in the 290th District Court of Bexar County, Texas.

2.  On or about October 5, 1990, BENNY MARTINEZ was convicted of the state offense of Possession of Cocaine under 28 grams, in Cause No. 90-CR-5948W in the 290th District Court of Bexar County, Texas.

3.  On or about April 13, 1989, BENNY MARTINEZ had his probation revoked for Delivery of Heroin Under 28 Grams in Cause No. 88-CR-4237 in the 186th District Court of Bexar County, Texas.

21 U.S.C. § 841(b)(1)(A) provides: "If any person commits such a violation . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment . . ."

**Defendant JOHNNY DELAROSA, a.k.a. Juanillo:**

Defendant, JOHNNY DELAROSA, has been finally convicted of felony drug offenses which subject him to enhanced punishment pursuant to 21 U.S.C. §§ 851 and 841(b)(1)(A), including the following:

1.    On or about June 24, 1988, JOHNNY DELAROSA, was convicted of Possession with Intent to Distribute Heroin in Cause Number SA-88-CR-35 in the United States District Court for the Western District of Texas, San Antonio Division.

2.    On or about September 17, 1985, JOHNNY DELAROSA, was found guilty of Possessing Marijuana for Sale and he was sentenced on October 15, 1985, in Docket Number CR11305, in Monterey County Superior Court in Salinas, California.

21 U.S.C. § 841(b)(1)(A) provides: "If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not less than 20 years and not more than life imprisonment . . . . If any person commits a violation . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment . . ."

A TRUE BILL:

ORIGINAL SIGNATURE
REDACTED PURSUANT TO
E-GOVERNMENT ACT OF 2002

JOHNNY SUTTON
United States Attorney

By: _____
ELIZABETH COTTINGHAM
Assistant United States Attorney