UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
|           Plaintiff,  ) | |
| )  | |
| v.  ) | CRIMINAL NO. A-08-CR-084(3)-SS |
| )  | |
| RICHARD SALAZAR,  ) | |
|           Defendant.  ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S
### MOTION TO SUPPRESS EVIDENCE

Defendant SALAZAR's Motion to Suppress is based on faulty contentions regarding the validity of his traffic stop as well as whether the stop was supported by reasonable suspicion. As will be shown by the following factual summary and legal analysis, SALAZAR's stop was supported by two valid traffic violations, and it was independently supported by reasonable suspicion. There was no illegal detention in this case. SALAZAR's consent is valid.

### FACTUAL SUMMARY

#### Events leading up to March 3, 2008 (Date of SALAZAR traffic stop)

A federal task force composed of FBI Special Agent Steve Hause and detectives with the Major Crimes/Gang Suppression Unit of the Austin Police Department had been conducting a long-term investigation of illegal activity conducted by Mexican Mafia members in the Austin, Texas, area. Debriefings of other Mexican Mafia members revealed that BENNY MARTINEZ and JOHNNY DELAROSA, a.k.a. JUANILLO, were high-ranking members of this organization and were involved with the large scale distribution of cocaine (multi-kilograms per week). Both of these individuals are also documented members of the Mexican Mafia who have convictions for drug-trafficking offenses. Prior to the stop of SALAZAR, the information provided by the cooperating

witnesses was further corroborated by undercover buys of drugs from BENNY MARTINEZ, numerous law enforcement surveillances, trash runs, reviews of taped jail phone calls, phone toll record analysis, and a search warrant executed at JUANILLO DELAROSA's house.

More specifically, on November 9 and 16, 2007, trash runs were performed at the residence of BENNY and AMY MARTINEZ. These trash runs revealed kilo wrappers (which tested positive for cocaine) as well as tally sheets reflecting drug transactions totaling more than $300,000. On December 3, 2007, suspicious activity was observed during law enforcement surveillance of MARTINEZ's and DELAROSA's homes. BENNY MARTINEZ was observed leaving his home on two separate occasions and traveling to DELAROSA's home. On one occasion he brought a black box and on another occasion he brought a black trash bag. A traffic stop was conducted on DELAROSA after he left his home, and he was arrested on a warrant. The alert was then given to criminal associates of DELAROSA that he had been arrested. Various individuals were observed coming to the house and looking in the garage. Fellow Mexican Mafia member LORENZO SALAS was stopped for a traffic violation after he left DELAROSA's house carrying a black bag. Inside the black bag, law enforcement seized $35,376.00 in cash, more than 100 grams of cocaine, 5 pounds of marijuana, a dope scale, packaging, and tally sheets. Another car, containing Beatrice Marquez and fellow Mexican Mafia member Gabriel Marquez, was also observed at the scene. After they were stopped on a traffic stop, Gabriel Marquez was observed repeatedly attempting to use his cell phones to alert others.

Law enforcement toll analysis revealed that BENNY MARTINEZ, who was unaware of the stop of SALAS, tried to reach SALAS on 15 occasions that evening. Law enforcement obtained a search warrant for the residence of DELAROSA in Austin, Texas, and located a kilo of cocaine in

DELAROSA's garage that the coconspirators missed moving from the house. Jail phone calls from SALAS to DELAROSA revealed that SALAS had been alerted of DELAROSA's arrest and had tried to clear out the house but was unaware that he missed a kilo of cocaine. By the time of SALAZAR's traffic stop on March 3, 2008, therefore, law enforcement was well aware that BENNY MARTINEZ was a large level drug dealer.

### March 3, 2008 (Date of SALAZAR traffic stop)

Similar to the events of December 3, 2007 (when DELAROSA's house was being surveilled), on March 3, 2008, law enforcement was conducting a similar surveillance of BENNY MARTINEZ's house. Law enforcement observed SALAZAR commit typical drug transaction behavior. More specifically, they observed RICHARD SALAZAR stop at BENNY MARTINEZ's home for only about two to three minutes and then leave. This is the typical timing that the officers have previously observed with standard drug transactions. When SALAZAR left the home, after dark in the evening, Detective Fred Knorre observed that SALAZAR kept his headlights off while driving the length of the street (a clandestine behavior which Knorre had previously observed purchasers of drugs do on this street) and then wait to turn on his headlights until he turned onto the next street. This is a traffic violation which SALAZAR could have been stopped for immediately. Detective Knorre decided it would be more prudent, however, to conduct a traffic stop further from MARTINEZ's house so that the law enforcement surveillance of MARTINEZ's household would be less obvious.

Detectives Lake and Kyle maintained surveillance of SALAZAR's vehicle as it traveled on South Highway183. It was at this time that they observed SALAZAR commit a second traffic violation. SALAZAR made a turn from his lane onto the exit ramp without using his turn signal as is required by law. Detectives Lake and Kyle conducted a traffic stop of SALAZAR's vehicle.

Upon making contact with SALAZAR, both detectives noticed that SALAZAR was unusually nervous. Detective Lake described the nervousness as the same type and degree as if SALAZAR had just killed someone. It was not the type of nervousness normally associated with a traffic stop. Mr. SALAZAR was asked where he was coming from. SALAZAR replied that he was coming from "a rosary." Due to the surveillance at MARTINEZ's residence, the detectives knew this to be a false statement and also concluded that the location he listed for the "rosary" did not match his direction of travel. At this point, the detectives asked for consent to search SALAZAR's vehicle. SALAZAR readily provided consent to search his vehicle. When Detective Lake leaned the passenger seat forward, he immediately saw a latex glove that was wrapped around approximately 10 ounces of cocaine. When shown the cocaine, SALAZAR admitted that the cocaine was his and that he was responsible for placing the cocaine in the truck. SALAZAR was placed under arrest.

## LEGAL DISCUSSION

### Traffic stop was legally justified

There were multiple justifications for the initial traffic stop: 1) the traffic violation of driving without headlights; 2) the traffic violation of failing to signal a turn onto the exit ramp instead of proceeding straight in the right lane; and 3) both reasonable suspicion and probable cause to believe that an illegal drug-related transaction had occurred. The defense concedes that a valid traffic stop would provide an acceptable reason for stopping Mr. SALAZAR. The Supreme Court has found that an automobile may be stopped when there is probable cause to believe a traffic violation has occurred and the actual motives of the police in making the stop are irrelevant. *Whren v. U.S.,* 517 U.S. 806, 810-13 (1996).

### Headlight Offense

The defense completely fails to address the headlight offense described by Detective Knorre in his summary within the police report. Instead, the defense limits its analysis to the turn signal violation mentioned in the Criminal Complaint and ignores the additional information provided in the police report. The purpose of the Criminal Complaint Affidavit, however, is not to list all the legal justifications for a stop; the purpose of the Complaint is to provide a summary of facts to show why there was probable cause to believe SALAZAR committed an offense (possession with intent to distribute cocaine). Driving without headlights at night is an offense for which an officer may make an arrest. (See Texas Transportation Code §547.302 which requires the display of headlights during nighttime or when light is insufficient). Since officers are allowed to inventory a car pursuant to such an arrest, even had SALAZAR been less cooperative and refused to provide consent, the inevitable discovery doctrine would apply. *See U.S. v. Mendez*, 315 F.3d 132, 138-9 (2d Cir. 2002).

### Failing to Signal Intent Offense

The same is true of the failing to signal intent offense, as it is also an offense for which an officer may make an arrest. The defense suggests, however, that the turn signal offense was not a valid traffic stop in this case because "[t]he lane his vehicle was already in, the far right lane, became the exit only lane, requiring no turn or changing of lanes on his part." (See SALAZAR's Memorandum of Law in Support of Motion to Suppress, Document 62, page 7). The defense is incorrect. SALAZAR was not in an "exit only" lane. He had the option of proceeding straight ahead in his lane or turning his vehicle to the right to enter onto the exit ramp. He was required to indicate to the traffic behind him that he was choosing the option of proceeding right onto the exit ramp instead of straight ahead in his lane. The defense concedes that "Texas Transportation Code

5

§545.104 requires the use of a signal to indicate an intention to **turn**, **change lanes**, or start from a parked position."  (See SALAZAR's Memorandum of Law in Support of Motion to Suppress, Document 62, page 7; emphasis added).  The Transportation Code, which the defense cites in their memorandum, therefore, actually supports the government's position and not SALAZAR's position.  In addition, Texas Transportation Code §545.104(b) requires that the operator signal his intent continuously for not less than the last 100 feet of movement prior to the turn.  Whether the turning of SALAZAR's vehicle to the right to change from his lane to the exit ramp is classified as a turn and/or a lane change, therefore, is inconsequential since either one (or both) constitutes a violation of the Texas Transportation Code.

## Reasonable Suspicion Independently Justifies Stop

In *Terry v. Ohio*, 392 U.S. 1, 22-24 (1968), the Supreme Court concluded that when police reasonably suspect that an individual is engaged in criminal activity, they may stop the person and question that person for a limited period of time, including frisking them for weapons.  In the instant case, the police had specific and articulable facts to show that BENNY MARTINEZ was an extremely high-level drug dealer and a member of the Mexican Mafia, and that SALAZAR had exhibited typical drug transaction behavior through his very brief stop at his house and had continued to exhibit suspicious behavior as he drove down the street with his headlights off at night.  Obviously, SALAZAR could have been stopped for the headlight offense standing alone, but when combined with the other factors in this case it provided reasonable suspicion that SALAZAR was involved with MARTINEZ's criminal activity.  Under *Terry*, therefore, the officers had a right to stop SALAZAR and to question him.  When SALAZAR expressed extreme nervousness and lied about where he was coming from, this obviously cemented the officers' conclusions regarding his drug visit to BENNY MARTINEZ's house.  The Fourth Amendment does not require that police

obtain a warrant to search a vehicle when they have probable cause to believe it contains evidence of criminal activity. *U.S. v. Ross*, 456 U.S. 798, 804-09 (1982). In the instant case, however, the police asked SALAZAR for consent to search before conducting any search of his vehicle.

**Consent to Search**

Law enforcement is entitled to conduct a search without a warrant or probable cause based upon a subject's voluntary consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *U.S. v. Mendoza-Gonzalez*, 318 F.3d 663, 667 (5th Cir. 2003). Consent may be express or implied and can be valid even when given "reluctantly." *See U.S. v. Rivas*, 99 F.3d 170, 176 (5th Cir. 1996). In the instant case, however, SALAZAR's consent was express and was given readily. The defense does not present any facts in their motion indicating any coercive actions taken by the police. Instead, the defense relies on their contention that the detention was illegal which rendered the consent invalid. There was no illegal detention in this case. The two valid traffic offenses and reasonable suspicion of criminal activity each provided an independent justification for the stop. The consent is valid.

    Respectfully submitted,

    JOHNNY SUTTON
    UNITED STATES ATTORNEY

By:  /s/ ELIZABETH COTTINGHAM
    ELIZABETH COTTINGHAM
    Assistant U. S. Attorney
    State Bar No. 04865500
    816 Congress Avenue, Suite 1000
    Austin, Texas 78701
    Office  (512) 916-5858
    Fax    (512) /916-5858

**CERTIFICATE OF SERVICE**

       I hereby certify that on the 28th day of May 2008, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System which will transmit notification of such filing to the following CM/ECF participants:

| | | |
|---|---|---|
| **Jesus Guadalupe Rivera**<br>Law Offices of Jesse G. Rivera<br>310 S. St. Mary's<br>Suite 1290<br>San Antonio, TX  78205 | representing | **Benny Martinez (1)**<br>*Defendant* |
| **Keith A. Pardue**<br>Pardue and Associates<br>311 620 South<br>Suite 103<br>Austin, TX  78734-0001 | representing | **Johnny Delarosa (2)**<br>*Defendant* |
| **Stephen M. Orr**<br>Orr & Olavson<br>804 Rio Grande<br>Austin, TX  78701 | representing | **Richard Salazar (3)**<br>*Defendant* |
| **David R. Woodcock, Jr.**<br>**Nina M. Hess Hsu**<br>Vinson & Elkins, L.L.P.<br>The Terrance 7<br>2801 Via Fortuna<br>Suite 100<br>Austin, TX  78746 | representing | **Lorenzo Salas (4)**<br>*Defendant* |
| **Daniel James Vela**<br>Vela & Del Fierro, PLLC<br>210 E. Cevallos Street<br>San Antonio, TX  78204-1723 | representing | **Amy Martinez (5)**<br>*Defendant* |

                        /s/ ELIZABETH COTTINGHAM
                        ELIZABETH COTTINGHAM
                        Assistant United States Attorney

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CRIMINAL NO. A-08-CR-084(3)-SS** |
| ) | |
| **RICHARD SALAZAR,** ) | |
| **Defendant.** ) | |

### ORDER

Came on to be considered Defendant's Motion to Suppress, and the Court, having considered said motion and the response of the Government, hereby

ORDERS that Defendant's Motion to Suppress be DENIED.

ENTERED on this the _____ day of _____ 2008.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE